IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| LAUREN SCHAEFER, Individually, and on Behalf of All Others Similarly Situated,<br><br>*Plaintiff,*<br><br>vs.<br><br>ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY,<br><br>*Defendant.* | §§§§§§§§§§§§§<br><br>CIVIL ACTION No._____ |

## CLASS ACTION COMPLAINT

Plaintiff LAUREN SCHAEFER ("Plaintiff" or "Ms. Schaefer"), individually and on behalf of all others similarly situated, through the undersigned counsel, files this Class Action Complaint against Defendant, ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY ("Defendant" or "Allstate"). Plaintiff states the following:

### I. NATURE OF THE ACTION

1. Plaintiff brings this class action against Defendant Allstate to recover damages and other relief available at law and in equity on behalf of herself, as well as on behalf of other members of the class, to rectify Allstate's breach of contract and inequitable and unconscionable conduct detailed herein.

2. This action stems from Allstate's widespread business practice of unlawfully withholding funds owed to its insureds in breach of its contracts with its insureds and in breach of controlling Texas common law.

3. Insureds, such as Plaintiff and other class members, enter into automobile insurance policies with Allstate covering bodily injury and property damage (the "Policies").

4. The Policies state the various exclusions to coverage for bodily injury and property damage. One new exclusion applies to drivers involved in delivering food for popular delivery services like UberEats and GrubHub, which Allstate refers to "Delivery Network Companies" ("DNC"). The Policies contain an exclusion for "damage arising out of the ownership or operation of a vehicle while it is . . . being used by a DNC driver who is logged on to a DNC's digital network as a driver or is engaged in a prearranged delivery" ("Delivery Exclusion").

5. Under the guise of this delivery exclusion, Allstate has wrongfully denied coverage to many of its insureds for simply having a delivery service phone application "logged on" or "active" without being engaged in the service or action of delivery.

6. Allstate is well aware that many apps are passively "logged on" or "active" without actually being used by the driver. For example, an advertised feature of modern iPhone and iOS settings is that the device will keep a user logged into all applications that allow log ins through a users' Apple Account. *See* https://support.apple.com/en-us/102571 (last visited April 7, 2025). It takes a user a multi-step process to log out of apps each time they are used on a phone

7. Allstate has abused its ability to exclude coverage for certain actions by insureds and named drivers by improperly widening the scope of exclusions to include actions and events that have no casual connection to an otherwise covered loss.

8. Allstate does not establish any causal connection between a covered driver's being logged on to a DNC application, but without being in the act of delivery, with events that otherwise result in bodily injury and property damage coverage under its insureds' automobile insurance policies.

9. Allstate has wrongfully engaged in the business practice of unilaterally denying coverage for insureds where named drivers are merely logged on to a DNC network, but where an otherwise

covered loss arises out of a driver being engaged in an active delivery, and without establishing any other casual connection whatsoever.

10. Here, the DNC Exclusion requires "bodily injury or property damage **arising out of…**operation of a vehicle" where an insured "logged on to a DNC's digital network as a driver…" See Exhibit A, Sample Policy at II. B.1.2.(d) (emphasis added).

11. Where an exclusion includes "arising out of" language, Texas law, requires a "but for" casual connection between the events otherwise giving rise to coverage and the actions that are excluded from coverage. *See Utica Nat. Ins. Co. of Tex. v. Am. Indem. Co.*, 141 S.W.3d 198, 203 (Tex. 2004) (interpreting "to mean that there is but for causation").

12. Allstate's application of its delivery exclusion runs afoul of the required "but for" causation element under Texas law.

13. Allstate applies this exclusion arbitrarily and capriciously to insureds despite there being no causal connection between the covered bodily injuries and property damages where named drivers are operating vehicles and are merely "logged on to a DNC's digital network" and not engaged in a delivery.

14. Allstate's delivery exclusion cannot be used as a free license to exclude obviously covered damage that occurs under the general nature of operating a vehicle and not the "but for" result of a named driver being logged in to a DNC's digital network.

15. Moreover, it is impossible for insureds to show how an inaction (not manually logging out of passive applications) would not be the cause of a covered event.

16. Therefore, Allstate's exclusion improperly flips the burden of proving an exclusion of coverage that does not apply to insureds by creating an impossible task requiring insureds to show a non-physical digital event has no casual relation with a physical covered event.

## II. JURISDICTION AND VENUE

17. This Court has jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because this is a class action where a substantial number of the members of the proposed class of plaintiffs are citizens of a state different from Allstate and the aggregated amount in controversy exceeds $5,000,000, exclusive of interest and costs.

18. This Court has personal jurisdiction over Allstate because they regularly solicit and conduct the business at issue in this Complaint within the State of Texas.

19. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because a substantial part of the events giving rise to the claims asserted herein occurred in the Northern District of Texas, and specifically the County of Tarrant, where Plaintiff is domiciled and where Allstate conducts extensive business.

20. This Court has jurisdiction over Plaintiff's related state and common law claims pursuant to the doctrine of supplemental jurisdiction, 28 U.S.C. § 1367.

21. Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this judicial district.

## III. THE PARTIES

22. Plaintiff Ms. Schaefer is a resident of Texas and resides in Fort Worth, Texas. Ms. Schaefer is a member of the putative class defined herein and has been an insured with Allstate. Ms. Schaefer is a citizen of Texas.

23. Allstate is an Illinois corporation with its principal place of business located at 3075 Sanders Road, Suite 201, Northbrook, Illinois 60062-7127, and is a citizen of Illinois

## IV. FACTUAL BACKGROUND

A.  **The Allstate Automobile Property and Liability Coverage Insurance Policies**

24. Defendant Allstate issues insurance Policies to insureds for bodily injuries and property damages arising out of the use of certain insured vehicles.

25. For providing coverage for bodily injuries and property damages Allstate charges its insureds premiums.

26. Insureds, such as Ms. Schaefer, pay their premiums in order to be entitled to payment for covered losses under the Policies.

27. Allstate drafted and included various exclusions in the Polices it issues to its insureds, which attempt to preclude coverage and thus payment by Allstate for bodily injuries and property damages, should an excluded event occur.

28. Based on information and belief, Allstate exclusions are included to limit Allstate's liability for specific actions that raise the risk of loss more than what the Policies would otherwise consider as regularly anticipated risks from operating an automobile for non-commercial purposed.

29. Allstate has wrongfully engaged in the business practice of unilaterally denying coverage for insureds where named drivers are merely logged on to a DNC network without being engaged in an active delivery and without establishing any other casual connection.

30. Therefore, Allstate regularly denies its insureds coverage where named drivers are merely driving certain vehicles as anticipated by Allstate and its insureds, and where Allstate has not and cannot establish a but for casual connection between a covered loss occurring and a named driver being simply logged onto a DNC's network without actually being engaged in an active delivery.

B.  **Allegations Specific To Named Plaintiff and Putative Class Representative.**

   *1.  Ms. Schaefer*

31. Ms. Schaefer is a Texas resident and was an insured with Allstate.

32. Ms. Schaefer entered into an insurance policy with Allstate which was assigned Policy Number 416 665 994 (the "Policy").

33. This Policy was in effect from October 6, 2024 to October 6, 2025 ("Policy Period").

34. Ms. Schaefer's Policy named Ms. Schaefer's son, Tevyn Cook as a listed driver.

35. Ms. Schaefer's Policy listed Ms. Schaefer's 2022 Kia Telluride (the "Vehicle").

36. During the Policy Period, Tevyn Cook was driving the listed Vehicle.

37. At some points, Tevyn Cook was driving the Vehicle and engaged in delivering food to certain persons via DoorDash.

38. After completing Tevyn Cook's last delivery through the DoorDash delivery service, Mr. Cook ceased using any DNS applications.

39. On one such personal drive, while driving to his residence and without using any DNS applications, Tevyn Cook drove home without engaging another delivery or services.

40. Tevyn Cook was passively logged onto DoorDash's digital network via DoorDash's mobile phone application, along with every other application on his phone that did not automatically log out, but was not engaged in the act of using any DNS application or delivering food or other products available on DoorDash in any capacity.

41. Tevyn Cook was also not intending to engage in a new delivery through DoorDash or any other possible DNC after heading home despite still being passively logged onto the DoorDash mobile application.

42. On or about November 22, 2024, Tevyn Cook was driving the Vehicle home and during the drive a covered vehicular accident involving the Vehicle occurred resulting in bodily injuries and property damage (the "Incident").

43. Thereafter, Ms. Schaefer made a claim with Allstate for covered damages.

44. Allstate assigned the claim, claim number 0776586901 (the "Claim").

45. Thereafter Allstate conducted a brief and cursory investigation regarding the Claim including reviewing a statement from Tevyn Cook.

46. Through the statement Allstate learned that prior to the Incident, Tevyn Cook had been delivering food through the food and product delivery service application known as DoorDash.

47. The statement also noted that immediately prior to the Incident, Tevyn Cook has completed his last delivery and, though still logged on to DoorDash's digital network via its mobile application, began to head home for the night.

48. Allstate did not inquire into the connection, if any, between the Incident and Tevyn Cook being logged on to DoorDash's digital network.

49. Instead, Allstate informed Ms. Schaefer it would be denying the Claim via email on or about December 2, 2024, based on Allstate excluding coverage for losses "if the driver's app is active and looking for deliveries." This language is not found anywhere in the Policy and was a mere pre-text for denial of the claim.

50. Ms. Schaefer immediately noted that her son was not engaged in actively looking for deliveries but was instead "making his way home."

51. Despite additional clarity that Tevyn Cook was not actively engaged in a DNC's digital network and was, at most, simply still logged on to the DoorDash mobile application while on his way home, Allstate still denied the Claim.

52. Allstate replied stating "[a]nytime the app is active waiting for deliveries we are unable to provide coverage."

53. However, Allstate provided no explanation, statement, or connection that "but for" Tevyn Cook being logged into a DNC's digital network that the Incident would not have occurred.

54. As of today's date, Allstate has improperly withheld payment for damages to bodily injuries and property damage arising from the Incident.

## V.   CLASS ACTION ALLEGATIONS

55. This action satisfies the prerequisites for maintenance as a class action provided in Fed. R. Civ. P. 23, as set forth herein.

56. **Class Definition**. Plaintiff brings this action individually and on behalf of the following class of similarly situated persons (the "Class"), of which Plaintiff is a member:

> **All natural persons or legal entities who, within the applicable statutes of limitation, were insureds of Allstate and were denied coverage under their Policies for being logged in to a DNC's digital network without any other exclusion applying.**

57. Excluded from the Class are Allstate and any of their respective officers, directors or employees, the presiding judge, Class counsel, and members of their immediate families, and persons or entities who timely and properly exclude themselves from the Class.

58. The members of the Class are so numerous and geographically dispersed throughout the United States and the entire world such that joinder of all members is impracticable. Plaintiff is informed and believes and thereon alleges that there are thousands of persons in the Class. The exact number and identity of Class members is unknown to Plaintiff at this time and can only be ascertained from information and records in the possession, custody or control of Allstate.

59. There are questions of law or fact common to all members of the Class including, but not limited to, the following:

- Whether excluding coverage under Plaintiff's and each member of the Class's Allstate automobile insurance policy for bodily injury and property damage solely for being logged in to a DNC's digital network is proper, legal, and enforceable under the law;

- Whether Plaintiff and each member of the Class had some or all of monies owed to them for a covered loss unlawfully held for an extended period of time based on an unenforceable policy exclusion.

60. The claims of Plaintiff are typical of the claims of the Class, in that they arise out of Allstate's uniform conduct and business practices.

61. Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained counsel who are competent and experienced in the prosecution of complex and class action litigation. The interests of Plaintiff are aligned with, and not antagonistic to, those of the Class.

62. A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiff and members of the Class. The injury suffered by each individual Class member is relatively small compared to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Allstate's conduct. It would be nearly impossible for members of the Class to individually redress the wrongs done to them in separate actions. Individualized rulings and judgments could further result in inconsistent relief for similarly situated individuals.

## FIRST CAUSE OF ACTION

## (BREACH OF WRITTEN CONTRACT)

63. Plaintiff incorporates each and every paragraph of this Complaint by reference as fully stated and/or set forth herein, and further states and alleges as follows.

64. The Parties have a valid, enforceable contract through the insurance Policies purchased.

65. Allstate breached the contract by failing to provide coverage for bodily injury and property damage covered under the Policy following the occurrence of a covered Incident.

66. Plaintiff and the Class members performed all of the conditions and covenants owed to Allstate under the terms of the Policy, except for those obligations that may have been excused by the conduct of Allstate.

67. Allstate breached the Policy as set forth herein, including but not limited by unlawfully withholding monies owed to Plaintiff and Class members for bodily injury and property damage following a covered incident.

68. As a proximate and direct result of Allstate's breaches, Plaintiff and the Class have sustained damages and will continue to sustain damages, in an amount to be proven at trial.

## SECOND CAUSE OF ACTION

## (UNJUST ENRICHMENT)

69. Plaintiff incorporates each and every paragraph of this Complaint by reference as though fully stated and/or set forth herein, and further state and allege as follows.

70. As described herein, Plaintiff and the Class members conferred upon Allstate an economic benefit, specifically the premiums paid in exchange for coverage under their insurance Policies for payment for bodily injury and property damage resulting from a covered event.

71. As a result of Allstate's actions set forth herein, including Allstate's unlawful withholding of money owed to its insureds on insurance claims, it would be unjust and unequitable for Allstate to retain such benefits at the expense of Plaintiff and the Class.

72. Allstate relied on an inapplicable exclusion to wrongfully deny payment for covered losses to its insureds without establishing a "but for" casual connection.

73. As a result of wrongfully denying payment for covered damages, Allstate has unlawfully retained premiums paid to it by Allstate's insureds with Plaintiff and the Class member's expectation that payments be made for covered damages.

74. Allstate's conduct was intentional, malicious, fraudulent and oppressive, and in conscious disregard of Plaintiff's rights and the rights of the Class. An award of punitive and/or exemplary damages against the Allstate is therefore appropriate.

## THIRD CAUSE OF ACTION

**(DECLARATORY RELIEF)**

75.     Plaintiff incorporates each and every paragraph of this Complaint by reference as fully stated and/or set forth herein, and further states and alleges as follows.

76.     As alleged herein, an actual controversy has arisen between Allstate on the one hand and Plaintiff and the Class members on the other, as to whether Allstate may exclude coverage for bodily injury and property damage under their automobile insurance policies based solely on a named driver being logged in to a DNC's digital network without establishing any causal link between an exclusion and the damages.

77.     To resolve the legal and factual questions raised by Plaintiff and the Class members and to afford relief from uncertainty, Plaintiff and the Class are entitled to issuance of an order stating their rights pursuant to 28 U.S.C. §§ 2201-02, and specifically declaring that Allstate may not exclude coverage for bodily injury and property damage under Plaintiff's and the Class members' automobile insurance policies based solely on a named driver being logged in to a DNC's digital network without establishing any causal link between an exclusion and the damages.

**FOURTH CAUSE OF ACTION**

*541 Insurance Code Violations*

78.     Plaintiff incorporates each and every paragraph of this Complaint by reference as fully stated and/or set forth herein, and further states and alleges as follows.

79.     Defendant is required to comply with Chapter 541 of the Texas Insurance Code.

80.     Defendant violated § 541.051 of the Texas Insurance Code by misrepresenting the terms and benefits of coverage when Defendant stated the insured Plaintiff was not entitled to the coverage due to a covered driver's phone being passively logged into a DNC despite the covered driver not being actively engaged in the DNC.

*Violation of § 541.060(a)(1):*

81. Defendant violated § 541.060(a)(1) by misrepresenting to Plaintiff a material fact or policy provision relating to coverage at issue by undervaluing the damage to the Property.

82. Specifically, Defendant has misrepresented that the insured's Policy did not provide coverage to the insured Plaintiff due to being logged onto a DNC without being actively engaged in the DNC.

83. Each of these acts and omissions, singularly or in conjunction with others, constituted a violation of Texas Insurance Code § 541.060(a)(1), which proximately caused Plaintiff damages.

*Violation of § 541.060(a)(2):*

84. Defendant violated § 541.060(a)(2) by failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim as insurer's liability had become reasonably clear that the covered loss occurred to the insured Plaintiff.

85. Defendant has failed to attempt in good faith to effectuate a prompt, fair and equitable settlement by:

   a. Misrepresenting the scope of coverage of the insured Plaintiff's Policy;

   b. Claiming an inapplicable exclusion applied to exclude coverage despite the fact that the exclusion is vague and ambiguous;

   c. Not conducting any reasonable investigation into the facts of the Claim to determine the extent that any driver was merely passively logged into a DNC;

   d. Applying an exclusion purely to limit its liability on the Claim without regard to the actually applicability.

86. Each of these acts and omissions, singularly or in conjunction with others, constituted a violation of Texas Insurance Code § 541.060(a)(2), which proximately caused Plaintiff damages.

*Violation of § 541.060(a)(3):*

87. Defendant violated § 541.060(a)(3) by failing to promptly provide Plaintiff a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of the Claim or offer of a compromise settlement of a claim.

88. Defendant has failed to promptly provide Plaintiff a reasonable explanation of the basis for Defendant's denial of the Claim. Defendant's denial of coverage failed to provide any explanation as to the facts regarding the actual use of a DNC by a driver.

89. Each of these acts and omissions, singularly or in conjunction with others, constituted a violation of Texas Insurance Code § 541.060(a)(3), which proximately caused Plaintiff's damages.

*Violation of § 541.060(a)(7):*

90. Defendant violated § 541.060(a)(7) by refusing to pay Plaintiff's Claim without conducting a reasonable investigation with respect to the Claim.

91. Defendant has refused to pay Plaintiff's Claim without conducting a reasonable investigation by:

   a. Misrepresenting the scope of coverage of the insured Plaintiff's Policy;

   b. Claiming an inapplicable exclusion applied to exclude coverage despite the fact that the exclusion is vague and ambiguous;

   c. Not conducting any reasonable investigation into the facts of the Claim to determine the extent that any driver was merely passively logged into a DNC;

   d. Applying an exclusion purely to limit its liability on the Claim without regard to the actually applicability.

92. Each of these acts and omissions, singularly or in conjunction with others, constituted a violation of Texas Insurance Code § 541.060(a)(7), which proximately caused Plaintiff damages.

93. Defendant has violated § 541.061 by making a material misstatement of law when claiming that having a DNC open without actively engaging in the DNC still excluded coverage.

## FOURTH CAUSE OF ACTION

## (BREACH OF DUTY OF GOOD FAITH AND FAIR DEADLING)

94. Plaintiff incorporates each and every paragraph of this Complaint by reference as fully stated and/or set forth herein, and further states and alleges as follows.

95. Plaintiff and Defendant entered into a valid and enforceable insurance policy.

96. Defendant owed Plaintiff the common law duty of good faith and fair dealing.

97. Defendant breached the common law duty of good faith and fair dealing by wrongfully Choose an item. the Claim and delaying payment on the Claim when Defendant knew or should have known liability was reasonably clear.

98. Specifically, Defendant has breached the common law duty of good faith and fair dealing owed to Plaintiff by:

   a. Misrepresenting the scope of coverage of the insured Plaintiff's Policy;

   b. Claiming an inapplicable exclusion applied to exclude coverage despite the fact that the exclusion is vague and ambiguous;

   c. Not conducting any reasonable investigation into the facts of the Claim to determine the extent that any driver was merely passively logged into a DNC;

   d. Applying an exclusion purely to limit its liability on the Claim without regard to the actually applicability.

99. Upon information and belief, Defendant's actions were performed without due regard or care for the Claim process and were done intentionally or with gross negligence.

100. Defendant was aware at all times that its actions would result in the denial or underpayment of Plaintiff's Claim, and cause mental anguish and thus extraordinary harm associated with Plaintiff's Claim.

101.    As a result of Defendant's acts and omissions, Plaintiff sustained actual damages.

## SIXTH CAUSE OF ACTION

### (VIOLATION OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT)

102.    Plaintiff incorporates each and every paragraph of this Complaint by reference as fully stated and/or set forth herein, and further states and alleges as follows.

103.    Allstate's actions as set forth herein violate the Texas Deceptive Trade Practices Act ("DTPA").

104.    The DTPA protects consumers from companies that engage in "false, misleading, or deceptive acts or practices"

105.    Specifically, if an entity "represent[s] that an agreement confers or involves rights, remedies, or obligations which it does not have or involve" then it has violated the DTPA by engaging in false, misleading, or deceptive acts or practices. Tex. Bus. & Com. Code Ann. § 17.46(b)(12).

106.    Here Allstate represented to Plaintiff and Class members that it would provide coverage for bodily injury and property damage under its automobile insurance polices.

107.    Allstate represented that such coverage would comply with applicable legal standards and laws.

108.    Despite this representation, Allstate applied an exclusion that requires no "but for" casual link between the damages and the exclusion and wrongfully applied this exclusion in an effort to deny coverage for valid insurance claims.

109.    Based on information and belief, Allstate did so in an effort to limit its liability on thousands of valid claims and thereby increase its profit.

110. Allstate's conduct was intentional, malicious, misleading, fraudulent and oppressive, and in conscious disregard of Plaintiff's rights and the rights of the Class. An award of punitive and/or exemplary damages against Allstate is therefore appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and members of the Class pray as follows:

1. That the Court enter an order certifying the Class, appointing Plaintiff as representative of the Class, appointing Plaintiff's counsel as class counsel, and directing that reasonable notice of this action, as provided by Federal Rule of Civil Procedure 23(c)(2), be given to the Class;

2. For general, specific and compensatory damages, including restitution, in an amount to be proven at trial;

4. For punitive and exemplary damages as permitted by law;

5. For a declaration of Plaintiff's and the Class members' rights with respect to those funds unlawfully withheld by Allstate;

6. That the Court enter an Order finding that Allstate is liable for all damages caused to Plaintiff and the Class members;

7. For prejudgment and post-judgment interest as provided by law;

8. For costs of suit, including reasonable attorneys' fees; and

9. For such other and further relief as the Court may deem appropriate, proper and equitable.

## JURY TRIAL DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff, on its own behalf and on behalf of all others similarly situated, hereby demand a trial by jury.

Respectfully submitted,

*/s/ Andrew D. Spadoni*
Preston J. Dugas III
State Bar No. 24050189
pdugas@dcclawfirm.com
Vincent P. Circelli
State Bar No. 24058804
vcircelli@dcclawfirm.com
Andrew D. Spadoni
State Bar No. 24109198
aspadoni@dcclawfirm.com

**DUGAS & CIRCELLI, PLLC**
4800 Bryany Irvin Ct.
Fort Worth, Texas 76107
Telephone:	(817) 817-7000
Facsimile:	(682) 219-0761

**ATTORNEYS FOR PLAINTIFF AND CLASS MEMBERS**